Good morning. May it please the Court, my name is Anna Benvenue. I'm appearing on behalf of Petitioner Mandeep Singh. There are two issues before the Court today. The first is the Board's finding that the government met its burden to prove that Mr. Singh can safely and reasonably relocate in India. And the second is Mr. Singh's eligibility under the CAT, our Convention Against Torture. Here, the Board's conclusion that Mr. Singh can safely and reasonably relocate is not supported by substantial evidence. The government failed to present evidence that if Mr. Singh moves to another state in India, continues acting as he did in the Punjab, where he is from, that those police in that area won't treat him the same as the Punjab police did. Here, he has a history of political activity, and it's that political activity that led to two arrests in which he was tortured. And those arrests, based on that political activity... Where does the duty arise to show that the police in a different state would treat him the same as the police in the Punjab did? Well, it's the government's burden to rebut the presumption that he'll be persecuted in the same manner that he was persecuted in the Punjab. So in the Punjab, he expressed political opinions on two occasions, was arrested. If he moves to another state... You mean we're entitled to – your client is entitled to a presumption that the police in other states will behave the same way that the Punjabi police behave? Essentially, yes. Why would we presume that? Well, that's what the regulatory presumption allows him. He suffered past persecution on account of expressing a political opinion... Right. From police in the Punjab. Right. Why would we think that police in some other state are going to behave the same way? Well, that's the presumption he's entitled to because he's shown that he experienced past persecution on account of those things in the Punjab. Well, the evidence that the BIA and the IJ relied upon, though, were the country condition reports that did suggest that there are significant Sikh communities outside the Punjab where people are not treated the same way as your client. And why isn't that substantial evidence to support the ultimate conclusion that he could safely relocate? Well, the evidence in the record shows that things in the Punjab have changed since the 80s and 90s. Well, that's also true. Certainly. But the evidence – and the evidence in the record shows that there are Sikh communities living elsewhere in India. Right. And things – but things are better everywhere, I guess. So why isn't that sufficient? Well, the truth is the record doesn't contain evidence about what happens to political activists like Mr. Singh who expressed an opinion and were tortured on account of that opinion. The record evidence shows that throughout India the police are corrupt. The police torture people that are arrested. And there isn't evidence in the record that police in other states aren't arresting political activists in the same way that they were arresting people like Mr. Singh in the Punjab when he committed. There was evidence that the Punjabi police, though, did not seek to find lower-level activists in other states themselves. Right. So that's one issue, whether the actual Punjab police would leave their state to go after him. But the second issue is, let's just assume he moves to Haryana or Uttar Pradesh or a different state and then continues to act as he did in the Punjab, which is the presumption he's entitled to. Why then there does the government have to not prove that the police won't continue to persecute him, just in those new police, those local police? This is the first time I think I've heard this argument, because I think all of the evidence at the hearing had to do with whether he had any evidence that the Punjabi police would seek to find him someplace else in India. That's a very, very different argument. Well, certainly I think that the government's burden is to prove that he would not suffer persecution either at the hands of the Punjabi police, central police, or whatever local police in the area that he's living in are. That's the government's burden for sure. And the government didn't produce any evidence that shows that police in some area that he moved to, let's pick a state, the government needs to pick a state and show that if he moves to that state, local police are really tolerant of political activists. That's the upshot of the U.K. report and the State Department report, is that things in the Punjab have been, for Sikhs, have been traditionally very, very bad, and that there are Sikh communities elsewhere, that India doesn't have any citizen registration laws, so it's very difficult to track where people move. We have a billion people, and if he moves someplace else to another Sikh community, there was no discussion that there was any persecution going on in any place else other than the Punjab. Right. And perhaps Kashmir. But those Sikh communities, that's just saying it's a Sikh community. That's presuming that he's not going to be a political activist. The one thing that those reports did say was that the people who might be in danger, the Sikhs who might be in danger are those who have either engaged in some form of terrorism or those who have been leaders. And neither one of those really seems to apply to your client. Right. But that's with regard to whether the Punjab police would hunt somebody down outside of Punjab. Right. And that I thought was his principal complaint. That was the evidence that was raised at the hearing was that he feared that he would be hunted by the Punjabi police, not that he would be persecuted by anybody else. That's certainly the evidence that the government wants you to consider. But by framing the issue in that way, they get to avoid their real burden, which is, I'm a political activist. I've been arrested on account of my political activities. If I move to another state, you have to show that the police are going to be like, oh, yeah, we love political activists here in our state. Come on down to Haryana where political activists can do what they want. You know, counsel, I've sat on this court for 11 years now, and I've heard many, many of these Sikh cases, and they're very disturbing cases. I think that every Sikh case I've heard came out of the Punjab or Kashmir. I don't think I've ever seen a Sikh case out of any other place in India. Do you have any evidence that Sikhs are persecuted generally in other places in India? Well, I think the point, Your Honor, is that that's the government's job to present that evidence. I know. I just asked a straightforward question. No, in this record, no evidence like that exists. I'm trying to think of any case that we have heard in which we have, you know, members of the Akali Dalman Party or the All India Sikh Student Federation that were in other places other than either the Punjab or perhaps Kashmir who were persecuted on account of their Sikh activism. No, but the record in this case, the DHS, the government would have to put that evidence into the record to show that somebody is safe. I just asked you if you knew of any case in this court from any place outside of either Kashmir or the Punjab. No, I don't. But the record here is the government's burden. What has the government done to rebut a regulatory presumption? And there's, in fact, two presumptions here. One is just the presumption that a political activist will suffer torture in another state. But he's got a double presumption, which is that he was persecuted by police. And so this court has repeatedly said that where the government is the persecutor, it's presumed that there's no safe state outside of his home state. So the combination of those two presumptions and the government's failure to put in that evidence is really the issue here. I agree that there's not evidence that shows that an Akali Dalman activist living in Uttar Pradesh or living in Bombay will be persecuted on account of his political activity, but that's he's got the presumption. The government has to put that evidence in showing that the police will not torture him there, and they didn't do that. So this court has to reverse because the government failed to meet its own burden to put that evidence in. Additionally, the fact that the agency concluded that it was reasonable for Mr. Singh to relocate should also be a basis for a reversal here. The I.J. and the board didn't really discuss what factors it relied on. It made a conclusory statement. The I.J. simply ignored other serious harm, geographical limitations, and social and cultural constraints. And in fact, the I.J. put the burden on Mr. Singh, again, placing the burden on Mr. Singh, to show that it would be reasonable. Oh, I find that the fact that you're married and have a child that are United States citizens or lawful permanent residents don't require, don't make it unreasonable. The question isn't whether it's unreasonable. The question is whether the government has proved that it is reasonable. Let me just ask you, you seem to be, when you talk about police, you seem to be talking about some kind of national police force. Is that what this record shows, or is it that it was the Punjabi police? Mr. Singh has two arrests. The first was by Punjabi police, and the second was by the CIA staff, which is a investigative criminal investigative agency that is a wing of the national government and that referenced his first arrest and seemed to know about his first arrest when they arrested him. So there's two actors here. One is local and one is not. I'm going to reserve the rest of my time. You may do that. You have a minute left. And we'll hear now from the government. Good morning. May it please the Court. Catherine By on behalf of the United States Attorney General. In this case, Petitioner had the benefit of an asylum officer, an immigration judge, and the board all de novo reviewing the fact that while he did establish that he was persecuted in the past on account of his Sikh religion and membership in the AISSF, he, the government also demonstrated that it had rebutted that presumption that he would be persecuted in the future. I would like to clarify the burdens that I think she's talking about here. The government was required to rebut the presumption in one of two ways, either of which would have been dispositive and either of which was. Here, the I.J. set forth the regulation that laid out both of those burdens, and then the board de novo reviewed both of those. Because the agency properly rebutted the presumption of a well-founded fear of future persecution, he was the burden then shifted back to him to show that he had an objective and subjective well-founded fear, which he failed to do. So I think there's been a little bit of a conflation on the burden here. Counsel, this is a question from far left field that you may or may not be prepared to answer, but is this a case that would benefit from mediation since this person obviously was found credible and does not appear in our record to have any sort of criminal history and has citizen family members? My answer, I guess, would have to be a little bit delicate. I can say that there has been an investigation into this case. I think the contents of those settlement talks are not proper. I cannot properly describe them. I understand that it's really more of a procedural question whether, in your view, it would be beneficial to have that process proceed in this court or not. I think that in this case it would not be beneficial to go to mediation. I think there is a reason that this case has gone forth on the asylum claim. Okay. Thank you. And the other issue being put forth right now in terms of the Convention Against Torture, because the government did rebut these presumptions of a well-founded fear, it also necessarily rebutted any idea of torture. So if the Court has no further questions. Well, what is your response to the argument that there was that you didn't rebut the national police going after him in another place? I think in this case this would just be a contention with the weight of the evidence. And there is a presumption here that the IJ and the Board did review all of the available evidence and ultimately came out and found that there were the State Department and the U.K. agency reports properly rebutted it. And any contention now is an abusive discretion argument which isn't really appropriate where the record doesn't show. So does the government have to prove that police in other places aren't arresting Sikhs on the same grounds that the Punjabi police are? The government has to prove that he no longer has a well-founded fear of future persecution. And by placing these documents in the record that show in situations like this where he was a low-ranking member, a student member, he distributed pamphlets and he has no history of militancy or other terrorism, he really won't be singled out. And the weight of the evidence showed that and the agency properly found that. So there's nothing in the record that compels reversal of the agency's decision. The petition should be denied. Thank you. Thank you. And you have a minute left for rebuttal. So with regard to the Convention Against Torture, there are many factors that both the immigration judge and board should evaluate. They're listed in the regulations. This Court has said that the principal factor upon which courts should rely is past torture. And in this case, the immigration judge and the board just ignored Mr. Singh's past torture when evaluating his eligibility under the convention. They simply said, it's reasonable for him to relocate, done. And there's no one dispositive factor there. It's a weighing of the factors. So the board just wrote a one-sentence conclusion that it agreed with the immigration judge here. The immigration judge simply disregarded on reasonableness of relocation, which is one factor in the regulations. But here, because he had past torture and because both the IJ and the board ignored that past torture that he suffered, this Court should at minimum remand for a consideration under the convention, a proper consideration of all the factors under the convention. Thank you very much. Thank you, counsel. We appreciate the arguments that both of you have given today. The case is submitted.
judges: SCHROEDER, GRABER, BYBEE